UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCHASHUNA D. WHYTE on behalf of herself
and a class of similarly situated individuals,

        **Plaintiff,**

   -against-

NEW YORK STATE POLICE, et al.,

        **Defendants.**

**MEMORANDUM & ORDER
22-CV-05633 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Schashuna D. Whyte ("Plaintiff") brought this action against the New York State Police ("NYSP"), Kevin P. Bruen, Keith M. Corlett, Paul E. Hogan, Douglas A. Larkin, Michael A. Ramirez, and Michael N. Volforte (collectively, "Represented Defendants"); and John Does 1-10, George P. Beach, II, Joseph D'Amico, and Robert A. Willis (collectively, "Non-Represented Defendants," and together with Represented Defendants, "Defendants")[1], alleging that she was discriminated against, subjected to a hostile work environment, and retaliated against on the basis of her gender and pregnancy. (*See generally* Compl. (Dkt. 1).) Plaintiff seeks relief on behalf of herself and a proposed class of similarly situated individuals, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*;

---

[1] Counsel for the Represented Defendants submits that this motion applies equally to the Non-Represented Defendants. (Defs.' Mot. to Dismiss ("Defs.' Mot.") (Dkt. 28) at 1 n.1.) The court notes that several Defendants listed in the caption of Plaintiff's pleadings have since been dismissed from this action. (*See* So Ordered Stipulation of Voluntary Dismissal ("Stip. of Vol. Dismissal") (Dkt. 24) (dismissing Kathleen Hochul, David Alexander Paterson, Eliot Laurence Spitzer, Harry J. Corbett, and Andrew Mark Cuomo).)

and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* (*Id.* ¶ 1.)

Currently before the court is Defendants' motion to dismiss this action pursuant to Rules 12(b)(1), (5), and (6) of the Federal Rules of Civil Procedure. (*See* Not. of Mot. (Dkt. 27); Defs.' Mot. (Dkt. 28); Pl.'s Opp. (Dkt. 30); Reply (Dkt. 31).) For the reasons set forth below, Defendants' motion is GRANTED in part and DE-NIED in part.

## I.  BACKGROUND[2]

Plaintiff was appointed as a trooper on or about October 24, 2016 by Defendant NYSP. (Compl. ¶ 129.) Upon graduation from the Police Academy, Plaintiff was assigned to Troop – NYC, Station SP Bronx ("SP Bronx") under the command of Defendant Robert Willis. (*Id.* ¶ 132.)

In or around September 2017, Plaintiff learned of her pregnancy but was afraid to notify Defendants Willis, George Beach, or the New York State Governor's Office of Employee Relations due to the cultural lack of respect shown to female employees. (*Id.* ¶ 133.) She confided in Station Commander Sergeant Wallace Gray who eventually helped her receive a modified assignment due to her pregnancy (*Id.* ¶ 137.) Between November 2017 and December 2017, and prior to her reassignment, Plaintiff alleges that on at least one occasion, and in the presence of Trooper Evantz Charmont, Sergeant Matthew Dolen told her that if it were "up to him," she would be on patrol because according to "the manual," since she was 3 months pregnant instead of 5 months, she should be on the road or home if she is not fit for

---

[2] The following facts are taken from the Amended Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,* 28 F.4th 343, 349 (2d Cir. 2022).

duty. (*Id.* ¶ 141.) During the same period, Trooper Charmont informed her that Sergeant Dolen made similar "nasty, insensitive, mean-spirited comments outside of her presence." (*Id.* ¶ 142.) Plaintiff shared this information with Sergeant Gray and Zone Sergeant Randy Smith who were equally appalled but did not report Sergeant Dolen's conduct. (*Id.* ¶ 144.) There was no paid maternity policy in place, but Defendant Willis authorized her transfer to an administrative assignment, handling communications at Station SP Wards Island ("SP Wards Island"), in light of her pregnancy. (*Id.* ¶¶ 131,135-38,145-48.)

On or about February 7, 2018, while Plaintiff was 6 months pregnant, due to complications with her pregnancy, Plaintiff's Obstetrics and Gynecology doctor ("OB/GYN") recommended that she work closer to home in case of an emergency. (*Id.* ¶ 151.) Plaintiff in turn requested a hardship transfer to Troop – L, Station SP Farmingdale ("SP Farmingdale") to handle communications and Defendant Willis authorized her transfer shortly thereafter. (*Id.* ¶¶ 152-53.) Plaintiff gave birth and went on leave without pay on or around May 30, 2018, and returned to work in February 2019. (*Id.* ¶¶ 156-57.) Upon her return, she was reassigned to Troop – NYC, Station SP Manhattan ("SP Manhattan") to handle communication under the command of Defendant Paul Hogan. (*Id.*)

Plaintiff alleges that upon her return, NYSP engaged in a pattern, practice, and policy of failing and refusing to provide her with reasonable break times and a proper location to express milk. (*Id.* ¶ 158.) Specifically, Plaintiff alleges Defendants Keith Corlett and Paul Hogan failed to inform her of her legal right to take unpaid leave for pumping breast milk, (*id.* ¶¶ 161-70); her right to be provided with a private room close to her work area where she could pump, (*id.* ¶¶ 171-78); her right not to be discriminated or retaliated against for pumping, (*id.* ¶ 179); and her rights related to nursing under the Affordable Care Act. (*Id.* ¶¶ 181-83). As a

result, Plaintiff expressed in storage rooms, police vehicles, and private bathrooms, which were uncomfortable and unsanitary. (*Id.* ¶¶ 186-89.) She then had to place expressed milk in portable lunch bags with ice and store them in her police vehicle as Defendants failed to provide a storage location. (*Id.* ¶ 187.) Plaintiff also alleges that Defendants failed to provide her with a re-sized protective vest despite her pregnancy-related change in figure. (*Id.* ¶¶ 184-86.)

Plaintiff learned of her second pregnancy on or around October 23, 2020 and confided in Sergeant Gray and Sergeant Richard St. Preux who requested she receive a modified assignment due to her high-risk pregnancy. (*Id.* ¶¶ 195-98.) Defendant Douglas Larkin approved the request. (*Id.* ¶ 199.) Plaintiff was initially transferred back to SP Farmingdale to handle communications, but her transfer was later rescinded pending evaluation by an NYSP investigator. (*Id.* ¶¶ 202-03.) In the interim, Plaintiff was assigned to the Aqueduct COVID-19 Test Site where she received few breaks and was forced to wear her existing uniform and duty belt despite them no longer fitting. (*Id.* ¶¶ 205-07.) NYSP investigator and Defendant Michael Ramirez, who was assigned to examine Plaintiff's request, critically questioned the veracity of her high-risk pregnancy monitoring plan, demanded more medical details, and posed accusatory questions to members of her family. (*Id.* ¶¶ 208-13.) Plaintiff alleges that she never received a decision about her request for a modified assignment. (*Id.* ¶ 214.) Plaintiff also alleges Defendant Kevin Bruen and Defendant Larkin forced her to commute three to four hours daily to SP Manhattan rather than ten minutes to SP Farmingdale as requested. (*Id.* ¶¶ 216-18.) Plaintiff avers that Defendants' conduct toward her reinforced her belief that female employees are not respected in the NYSP. (*Id.* ¶ 219.)

On or about February 3, 2021, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 4.)

As of June 26, 2023, the date in which the instant motion was deemed fully briefed, Plaintiff had not yet received a right-to-sue letter. (*See generally* Pl.'s Opp.; Compl. ¶ 4.)

Plaintiff filed her Complaint on September 21, 2022, on behalf of herself, as well as a putative class of female employees who have been employed with NYSP since August 15, 2007, or will be employed by NYSP and that need or choose to express milk during work hours (the "Nursing Mothers Class"). (Compl. ¶ 7.) Claims I through III allege discrimination, hostile work environment, and retaliation in violation of Title VII. (*Id.* ¶¶ 228-39.) Claims IV through VI allege discrimination, hostile work environment, and retaliation in violation of 42 U.S.C. § 1983. (*Id.* ¶¶ 240-251.) Claims VII through IX allege discrimination, hostile work environment, and retaliation in violation of the NYSHRL. (*Id.* ¶¶ 252-268.) And claims X through XII allege discrimination, hostile work environment, and retaliation in violation of the NYCHRL. (*Id.* ¶¶ 269-85.)

Defendants moved to dismiss Plaintiff's Complaint in its entirety. (Defs.' Mot. at 1.)

## II.  LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998)[3], but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]," *APWU v. Potter*, 343 F.3d 619,

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

623 (2d Cir. 2003). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

**B.   Service of Process**

Rule 12(b)(5) of the Federal Rules of Civil Procedure allows a defendant to challenge the insufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(5); *Preston v. New York*, 223 F. Supp. 2d 452, 466 (S.D.N.Y. 2002) ("Insufficiency of process may provide grounds for the dismissal of a lawsuit."). When a defendant raises a Rule 12(b)(5) "challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy." *Preston*, 223 F. Supp. 2d at 466. A plaintiff has 90 days from the date the complaint is filed to serve the defendant with the summons and complaint. Fed. R. Civ. P. 4(m). "[I]f the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond her control." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 597 (E.D.N.Y. 2013).

**C.   Statutes of Limitations**

A claim under Title VII must be dismissed as untimely if a plaintiff has not filed a complaint with the EEOC within 180 days of the alleged discriminatory or retaliatory act or filed a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged illegal act. *See* 42 U.S.C. § 2000e-5(e)(1). "The Second Circuit has held that Title VII charges filed with the EEOC in New York are deemed to be simultaneously filed with the appropriate New York state agency pursuant to the EEOC's regulations and are therefore entitled to the 300 day limitations period." *McKenna v. Santander Inv. Sec., Inc.*, No. 21-CV-941 (DLC), 2022 WL 2986588, at *5 (S.D.N.Y. July 28, 2022) (citing

*Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 327-28 (2d Cir. 1999)).

Under § 1983, the NYSHRL, and the NYCHRL, the statute of limitations is three years from the date the complaint was filed. *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, 230 F. Supp. 3d 88, 97 (E.D.N.Y. 2017).

In limited circumstances, a "continuing violation" exception may apply when a plaintiff experiences a "continuous practice and policy of discrimination, . . . [allowing] the commencement of the statute of limitations period [to] be delayed until the last discriminatory act in furtherance of it." *Id.* (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)). This doctrine is most often invoked by plaintiffs alleging claims under Title VII, but courts have also applied the doctrine in employment discrimination cases brought under §§ 1981 and 1983, and under New York state and city law. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (collecting cases). It is well-established, however, that the continuing violation doctrine cannot save untimely claims for discrete discriminatory acts, even where those discrete acts are related to acts within the limitations period. *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom. Bright v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6 (2d Cir. 2015) (noting discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire as examples where the continuing violation would not apply). As such, "[a] plaintiff does not properly allege an ongoing discriminatory policy simply by invoking the magic words 'pattern' or 'practice.'" *Blake v. Bronx Lebanon Hosp. Ctr.*, No. 02-CV-3827 (CBM), 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003). Further, a plaintiff cannot establish a continuing violation "merely because the

claimant continues to feel the effects of a time-barred discriminatory act." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999).

Separately, the equitable remedy of tolling the statute of limitations may apply where an employee was actively misled by her employer, or prevented in some extraordinary way from exercising her rights. *Williams v. New York City Health & Hosp. Corp.*, No. 08-CV-4132 (RRM), 2010 WL 2836356, at *3 (E.D.N.Y. July 16, 2010) (citing *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985)).

### D.  Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* In deciding a motion to dismiss, the court will accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013). However, allegations that "are no more than conclusions [ ] are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). When determining the sufficiency of a plaintiff's claim under Rule 12(b)(6), a court may look beyond the complaint to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which

judicial notice may be taken, or to documents either in [plaintiff's] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

## III. DISCUSSION

Defendants' motion to dismiss asserts several procedural deficiencies in addition to alleging that Plaintiff's claims fail on the merits. The court begins by addressing the procedural deficiencies before proceeding to the merits as necessary.

### A. Subject Matter Jurisdiction as to Title VII Claims

Defendants move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this court lacks subject-matter jurisdiction over Plaintiff's Title VII claims.

Defendants assert that Plaintiff's Title VII claims must be dismissed because Plaintiff failed to exhaust her administrative remedies prior to initiating the present suit. (Defs.' Mot. at 6-7.) Defendants fault Plaintiff for failing to obtain a right-to-sue letter after filing her charge of discrimination with the EEOC on February 3, 2021. (*Id.; see also* Compl. ¶ 4). While it is "well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court," this prerequisite is merely a "precondition of suit" and not a jurisdictional requirement and, accordingly, is subject to equitable defenses upon a showing by the plaintiff of sufficient reason.[4] *Fowlkes v. Ironworkers Local 40*,

---

[4] Courts consider the failure to exhaust as an affirmative defense rather than a jurisdictional bar. *See Quinones v. New York City*, No. 19-CV-5400 (LJL) (DF), 2020 WL 5665142, at *7 (S.D.N.Y. Aug. 17, 2020), *report and recommendation adopted*, No. 19-CV-5400 (LJL), 2020 WL 6901340 (S.D.N.Y. Nov. 23, 2020); *Burton v. Am. Fed'n of Gov't Emps. (AFGE) 1988*, No. 11-CV-1416 (SLT) (LB), 2012 WL 3580399, at *7 (E.D.N.Y. Aug. 17, 2012). To hold otherwise would "effectively subvert the Second Circuit's

790 F.3d 378, 384 (2d Cir. 2015); *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (holding that a "plaintif's failure to fully comply with the remedial administrative scheme envisioned by Title VII does not preclude judicial review") (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)); *Ruiz v. New Avon LLC*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *10 (S.D.N.Y. Sept. 22, 2019) (citing 42 U.S.C. § 2000e-5(e)-(f)).

As the court finds that failure to obtain a right-to-sue letter is not jurisdictional, it must now decide whether the facts of this case warrant equitable modification of Title VII's statutory requirements. *See Ishikawa v. City of New York Dep't of Cultural Affs.*, No. 91-CV-7269 (SWK), 1993 WL 362393, at *5 (S.D.N.Y. Sept. 14, 1993).

Plaintiff alleges that she filed a charge of discrimination with the EEOC in February of 2021 but never received a right-to-sue letter despite follow up. (Compl. ¶ 4.) Plaintiff alleges that the only acknowledgement she received was from the United States Postal Service on December 6, 2021, confirming that her charge was delivered and received by "R.V." (*Id.* ¶ 5.)

Defendants argue the "proper procedure" in this circumstance would be for Plaintiff to file her non-Title VII claims and then amend her Complaint to include the Title VII claims after receiving the right-to-sue letter. (Defs.' Mot. at 7 (citing *Sughrim v. New York*, 503 F.Supp.3d 68, 95 (S.D.N.Y. 2020)).).

Courts in this Circuit have held, however, that "courts may waive or toll the statutory requirement of first obtaining a right to sue letter if the plaintiff shows or alleges that she made an effort to procure the right to sue letter or that she raised the failure to issue a right to sue letter with the EEOC prior to filing a federal

mandate that [exhaustion] is an affirmative defense." *Quinones*, 2020 WL 5665142, at *7.

court action." *Milne v. Navigant Consulting,* No. 08-CV-8964 (NRB), 2009 WL 4437412, at *4 (S.D.N.Y. Nov. 30, 2009); *see also Crisci-Balestra v. Civil Serv. Emps. Ass'n, Inc.,* No. 07-CV-1684, 2008 WL 413812, at *3 (E.D.N.Y. Feb. 13, 2008) ("Courts in [the Second Circuit] have recognized that the statutory pre-requisites for bringing a Title VII suit in federal court may be waived in cases where a plaintiff has in some extraordinary way been prevented from asserting her rights, or when the EEOC has incorrectly refused to issue a right-to-sue letter.").

Plaintiff has alleged that she attempted to obtain a right-to-sue letter from the EEOC. (Compl. ¶ 4.) Appended to her pleadings are (1) a letter from the Department of Justice ("DOJ") giving notice that it temporarily halted the issuance of right-to-sue notices during the COVID-19 pandemic, and (2) email correspondence with the Civil Rights Division inquiring about issuance of right-to-sue letters in several discrimination cases including this one. (DOJ Notice (Dkt. 30-1); DOJ Emails (Dkt. 30-2).)

Defendants urge the court to nevertheless find that Plaintiff has "thwarted" an "essential element" of Title VII's statutory framework and therefore the court must dismiss her Title VII claims. (Defs.' Mot. at 7.) The court disagrees.

Construing the facts in Plaintiff's favor, *Ishikawa,* 1993 WL 362393, at *5, Plaintiff's allegations indicate that she did make an effort to procure a right-to-sue letter by filing her charge of discrimination "several times" in 2021, (Compl. ¶ 4), and additionally raising the issue with the DOJ's Civil Rights Division in January 2023. (DOJ Emails.) While it does not appear from the pleadings that Plaintiff raised the issue with the DOJ prior to filing the instant action, (*see* Compl. (filed on Sept. 21, 2022)), the court finds that Plaintiff demonstrated that she could not obtain the required right-to-sue letter because the EEOC has not issued it despite her efforts. *Milne,* 2009 WL 4437412, at *4 (noting that

where plaintiff "made several follow-up calls" to the agency but did not receive a right-to-sue letter, the court could consider plaintiff's claims). At this early stage, the court declines to grant Defendants' motion to dismiss for failure to exhaust administrative remedies.

Defendants' motion to dismiss on the ground that the court lacks subject matter jurisdiction to hear Plaintiff's Title VII claims is DENIED.

### B.   Insufficient Service of Process

Defendants seek dismissal of four defendants—Joseph D'Amico, Robert Willis, George Beach, and Kevin Corlett—for insufficient service of process. In New York, a process server's affidavit of service constitutes prima facie evidence of proper service. *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

Defendants assert that Plaintiff has failed to provide any affidavit attesting to service upon D'Amico and Willis. (Defs.' Mot. at 4.) Plaintiff does not address the service of these two defendants, focusing only on the purported service of Defendants Beach and Corlett in her Opposition. (Pl.'s Opp. at 6-8.) A review of the docket in this case confirms that no affidavits have been submitted for Mr. D'Amico and Mr. Willis since the initial filing of the Complaint on September 21, 2022. Plaintiff's counsel did, however, provide the court with a status update on December 2, 2022 (albeit past the court ordered deadline) informing the court that he has been "working with the Attorney General's Office to facilitate the remaining personal service." (Status Report (Dkt. 18).) Neither that report, nor Plaintiff's pleadings, however, acknowledge that there is no affidavit on file affirming service on Mr. D'Amico. Indeed, Defendants submit to the court email correspondence with Plaintiff requesting status of service and noting that there is no affidavit of service for Mr. D'Amico on file. (Defs.' Ex. D Emails (Dkt. 29-4) at 1.) Further, Plaintiff has not given the

court an update as to the outstanding service requirements since December 2022. And Plaintiff is well beyond the 90-day period to serve Mr. D'Amico and Mr. Willis.[5]

Absent good cause for the prolonged failure to effectuate service upon these two individuals, the court finds that the claims against Defendants D'Amico and Willis are DISMISSED without prejudice.

Defendants also seek dismissal of Mr. Beach and Mr. Corlett on the ground that service of process was defective. (Defs.' Mot. at 4-5.) Rule 4 provides that a person may be served by, among other things, leaving a copy of the summons and complaint at the "individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). In New York, one may also effectuate service by delivering the summons to the person's actual place of business or usual place of abode and by mailing the summons to the last known residence or his actual place of business. *See* N.Y. C.P.L.R. 308(2). While the distinction between "dwelling place" and "usual place of abode" may be unclear, neither term has been understood to mean the last known residence of the defendant. *See United States v. Crosland*, No. 99-CV-4558 (ARR), 2018 WL 3029038, at *2 (E.D.N.Y. June 18, 2018). Thus, where a summons is delivered to a person of suitable age and discretion at the last known residence of the person to be served, the service is ineffective, even if the defendant "subsequently receives actual notice of the suit." *Id.*

Here, Defendants assert that Mr. Corlett no longer resides in the state of New York and was never personally served with the Summons and Complaint (Defs.' Mot. at 5.) Plaintiff responds that she served Mr. Corlett at his last known address provided by the

---

[5] Plaintiff is also well beyond the 120-day period to effectuate service pursuant to New York law. *See* N.Y. C.P.L.R. § 306-b.

defense and that the person who accepted service identified himself as Mr. Corlett's son. (Pl.'s Opp. at 7.) Plaintiff further points to Defendants' Declaration of Mr. Corlett where he confirms that he no longer "reside[s] with [his] son at the address in the state of New York where the summons was served" and has not lived there since 2010. (Corlett Declaration (Dkt. 29-2).) While Plaintiff may have served Mr. Corlett at his "last known residence," it was not his "dwelling or usual place of abode" at the time of service. Moreover, Plaintiff could not cure her defective service by serving the NYSP as the unrebutted evidence shows that Mr. Corlett retired from the NYSP on or about November 28, 2020. (*Id.*)

It is well established that "where service has not been proper, a district court has broad discretion either to dismiss the action or to quash the improper service and extend the time for service." *McIntosh v. Covenant House*, No. 05-CV-9973 (CM), 2007 WL 1946540, at *8 (S.D.N.Y. June 28, 2007). But where Defendants have sought to resolve the defects, asking Plaintiff to confirm the address where service was made and these requests have seemingly been ignored, dismissal is warranted. (*See generally* Defs.' Ex. D Emails; Defs.' Ex. E Emails (Dkt. 29-5).) Accordingly, the claims against Mr. Corlett must be DISMISSED without prejudice.

In the case of Mr. Beach, Plaintiff learned that Mr. Beach no longer worked at the NYSP but was employed with the Federal Bureau of Investigation ("FBI") in the District of Columbia (Pl.'s Opp. at 7.) Defendants allege that the summons was left with Steven Parker, who was identified as an "attorney at fbi [sic]" but that service upon a work colleague is improper under Rule 4(e)(2) as there is no proof that the Mr. Parker was authorized to accept service. (Defs.' Mot. at 5.) Plaintiff disagrees, noting that since the "FBI Building is a secure facility, the service of process was accepted consistent with law enforcement practices." (Pl.'s Opp. at 7.)

The law is clear that leaving a summons at the defendant's place of business with a person of suitable age and mailing a copy to the defendant's last known address is sufficient to effectuate service. *See* N.Y. C.P.L.R. 308(2). Defendants point out that this is only suitable for delivery under New York law and Mr. Beach was served in Washington, D.C. (Defs.' Mot. at 5 n.3.) Commentary to the C.P.L.R., however, explicitly states that "the same methods that are used to serve process on a defendant located in New York must also be used when service is made outside New York" as long as a proper basis for jurisdiction exists. *See* Practice Commentaries on N.Y. C.P.L.R. 308(2), at C308.1. Given that the summons for Mr. Beach was left at his place of employment in Washington, D.C., and that the court may exercise personal jurisdiction over Mr. Beach as he is alleged to have committed a tortious act within New York while employed at the NYSP, it was proper to serve Mr. Beach's colleague. Mr. Parker accepted service, verified Mr. Beach by name, confirmed he worked at the FBI with Mr. Beach, and did not expressly refuse or indicate that he was unauthorized to accept service. *Leung v. New York Univ.*, No. 08-CV-05150 (GBD), 2016 WL 1084141, at *8 (S.D.N.Y. Mar. 17, 2016) (rejecting argument that service was invalid because recipient was not authorized to accept service on defendant's behalf because "[a]uthorization [] is not required. All that is required is that the person to whom service is made be of suitable age and discretion.").

Defendants argue that Plaintiff's claims against Mr. Beach must still be dismissed because Plaintiff has failed to mail the summons "in an envelope bearing the legend personal and confidential." (Defs.' Mot. at 5.) Plaintiff does not refute this statement in her pleadings nor does the affidavit of service submitted on the case's docket show the envelop or address where the summons was

mailed.[6] (Beach Affidavit (Dkt. 14).) Additionally, Plaintiff has not satisfied proper service under federal or DC law. While the court is sensitive to the fact that mere technical errors should warrant amendment rather than dismissal, "flagrant disregard" of Rule 4 does not. *Osrecovery, Inc. v. One Group Int'l, Inc.,* 234 F.R.D. 59, 60 (S.D.N.Y.2005). Further, where the error "actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 65 (S.D.N.Y. 2010); *see Deptula v. Rosen,* 558 F. Supp. 3d 73, 89 (S.D.N.Y. 2021) (granting defendant's motion pursuant to 12(b)(5) where defendants "repeatedly raised the service deficiencies, but plaintiff *still* has not attempted reasonable efforts to cure them.") (emphasis in original).

As discussed *supra,* Defendants raised the issue of service several times and Plaintiff seemingly ignored Defendants' messages. (*See* Defs.' Ex. D Emails; Defs.' Ex. E Emails.) Rather than request an extension or address the substance of Defendants' claims, Plaintiff asserts that the Defendants are engaged in "gamesmanship."[7]

---

[6] Defendants take issue with the fact that the first page of the affidavits which list Defendants' addresses are "conspicuously missing." (Defs.' Mot. at 5.) Defendants argue this prevents Plaintiff from establishing proper service. (*Id.*) The court notes that the first page of the affidavits for each individual defendant is missing, not just for Mr. Beach and Mr. Corlett. However, this oversight is merely a technical error. *Durant v. Traditional Invs., Ltd.,* No. 88-CV-9048 (PKL), 1990 WL 33611, at *4 (S.D.N.Y. Mar. 22, 1990) ("When the error in the summons goes to form rather than substance, amendment . . . should be freely granted . . . as courts should not deny a plaintiff her day in court due to technical imperfections in service.").

[7] Plaintiff argues in the alternative that Mr. Corlett and Mr. Beach have "waived [a challenge of insufficient service of process] through their actions. The court disagrees. Defendants in their opening brief note that, at least with respect to Mr. Beach, he is not represented by counsel. (Defs.' Mot. at 1 n.1.) The email correspondence adds color as to why that is— Plaintiff has failed to properly effectuate service and as a result, Mr. Beach

Plaintiff has failed to show good cause for the defective service and delay. The court therefore does not find an extension of time to cure the defect appropriate in this case.

For the reasons aforementioned, the court finds that the claims against Mr. Beach must also be DISMISSED without prejudice.

Accordingly, Defendants' motion to dismiss is GRANTED with respect to insufficient service of process on the individual Defendants Beach, Corlett, D'Amico, and Willis. The claims against them are DISMISSED without prejudice.

### C. Timeliness of Plaintiff's Claims

Defendants argue that Plaintiff's Title VII claims that accrued prior to April 9, 2020, as well as her § 1983, NYSHRL, and NY-CHRL claims that accrued prior to September 22, 2019, are time-barred. (Defs.' Mot. at 7.). Plaintiff alleges that because her claims have been on-going since August 15, 2007, the statute of limitations period is extended under the continuing violation exception or equitable tolling and as such her claims are not time-barred. (Pl.'s Opp. at 9-10.)

1. Discrimination and Retaliation Claims Under Title VII, § 1983, NYSHRL, and NYCHRL

Plaintiff filed a Charge of Discrimination with the EEOC on or about February 3, 2021. (Compl. ¶ 4.) The instant action commenced on September 21, 2022. (*See generally* Compl.) Accordingly, the alleged discriminatory acts must have occurred after April 9, 2020 (300 days prior to EEOC Charge) to be timely under Title VII. Similarly, the alleged discriminatory acts must

---

has not requested that the Office of the Attorney General represent him. (Defs.' Ex. D Emails at 1.). It is clear that Mr. Beach has not waived service through his actions. Moreover, at the time of the email correspondence, Mr. Corlett also had not requested counsel. (*Id.*) While he has since done so, his purported service was still defective warranting dismissal in this case.

have occurred after September 21, 2019 (three years prior to in-
stant lawsuit) to be timely under § 1983, the NYSHRL, and the
NYCHRL.[8]

Plaintiff's individual claims allege discrimination and retaliatory
conduct dating back to September 2017 (*Id.* ¶¶ 127-28.) These
are clearly outside the limitations period. She contends that her
claims are timely, however, under the continuing violation doc-
trine because the Defendants actions—engaging in a pattern,
practice, and policy of failing and refusing to provide nursing
mothers with reasonable break times and a proper location to
express milk—are the result of a discriminatory policy or mecha-
nism that has been on-going since August 15, 2007. (Compl. ¶
158; Pl.'s Opp. at 10-11.)

Plaintiff does not specify which acts predating April 9, 2020 and
September 21, 2019 are part of the alleged a discriminatory pol-
icy or practice. Rather, she conclusorily asserts that Defendants'
acts are the result of a "discriminatory policy or mechanism" war-
ranting waiver of the statute of limitations. (*Id.*)

Even considering all of the individual acts that Plaintiff has al-
leged prior to April 9, 2020, Plaintiff has failed to assert that these
facts support the conclusion that "intentional discrimination was
the defendant's standard operating procedure, as she must in a
pattern or practice claim." *Mirasol v. Gutierrez*, No. 05-CV-6368
(DC), 2006 WL 871028, at *5 (S.D.N.Y. Apr. 5, 2006). Rather,
Plaintiff asserts that because NYSP did not have proper accom-
modations and reasonable break times in place, she was forced
to pump in vehicles or bathrooms (*id.* ¶¶ 127, 186), forced to
store her expressed milk in a portable lunch bag in her police

---

[8] The court clarifies that the statute of limitations for Plaintiff's § 1983,
NYSHRL, and NYCHRL claims started to run on September 21, 2019—
three years prior to the filing of this lawsuit. Defendants' assertion that the
statute of limitations started on September 22, 2019 was therefore in error.
(Defs.' Mot. at 7.)

vehicle (*id.* ¶¶ 128, 187), and forced to wear her vest and duty belt despite her change in weight due to her pregnancy. (*Id.* ¶ 184.) However, Plaintiff does not allege that she requested and was denied a proper room to express or store her breast milk. Nor does she plead any facts showing that she (or any other nursing mother) was treated differently on the basis of her pregnancy. *See Wilson v. Ontario Cnty. Sheriff's Dep't,* No. 12-CV-06706 (EAW), 2014 WL 3894493, at *12 (W.D.N.Y. Aug. 8, 2014) (noting that where plaintiff failed to allege that she was prohibited from expressing milk during regular breaks and that her non-lactating coworkers were permitted to take breaks and that she was not, her claims could not serve as the basis for a Title VII claim); *see also Falk v. City of Glendale,* No. 12-CV-00925 (JLK), 2012 WL 2390556, at *4 (D.Colo. June 25, 2012) (dismissing plaintiff's pregnancy discrimination claim explaining that the "Pregnancy Discrimination Act does not require any affirmative accommodations, it simply prohibits employers from treating pregnancy-related conditions less favorable than other medical conditions.").

Moreover, Plaintiff alleges that Sergeant Matthew Dolen made an insensitive comment, telling her that, "[if] it were up to him, she would be on patrol because according to the manual, since she was 3 months pregnant instead of 5 months, she should be on the road or home [and] if [she was] not fit for duty [he doesn't] care." (Compl. ¶ 141.) She also asserts that a colleague told her that Sergeant Dolen made similar "nasty, insensitive, mean-spirited comments outside of her presence." (*Id.* ¶ 142.) However, the singular comment told to Plaintiff at some point between November and December 2017, alongside the other acts described above are discreet and unrelated acts by different supervisors that are insufficient to form the basis for a continuing violation. *See Mirasol,* No. 05-CV-6368 (DC), 2006 WL 871028, at *5.

Similarly, Plaintiff has not shown that equitable tolling or waiver should apply. Plaintiff has made no showing that she was misled or prevented from filing a timely claim with the EEOC. Accordingly, Plaintiff's discrimination and retaliation claims are time-barred to the extent they pertain to conduct that occurred prior to April 9, 2020 under Title VII, and September 21, 2019 under § 1983, the NYSHRL, and the NYCHRL.

> 2.   Hostile Work Environment Claims Under Title VII, § 1983, NYSHRL, and NYCHRL

Plaintiff's hostile work environment claims warrant different treatment than her discrimination and retaliation claims. "A charge alleging a hostile work environment claim [] will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). This "requires courts to make an individualized assessment of whether incidents and episodes are related, an inquiry in which courts have flexibility that is useful in a context as amorphous as hostile work environment." *Grimes-Jenkins v. Consol. Edison Co. of New York, Inc.*, No. 16-CV-4897 (AT) (JCF), 2017 WL 2258374, at *12 (S.D.N.Y. May 22, 2017), *report and recommendation adopted*, No. 16-CV-4897 (AT) (JCF), 2017 WL 2709747 (S.D.N.Y. June 22, 2017).

Here, Plaintiff identifies a series of acts by Defendants regarding her request for a modified assignment that occurred within the limitations period. Specifically, she alleges that in December 2020, her request for a modified assignment due to her high-risk pregnancy was rescinded by Lieutenant Christopher M. Kyle (Compl. ¶ 203.) As a result, she was contacted by Defendant Ramirez to investigate her request for a modified assignment and in turn he "posed accusatory questions" to members of her family

and "questioned the veracity of" her high-risk pregnancy monitoring plan. (*Id.* ¶¶ 209-13.) She then alleges that Defendants Bruen and Larkin intentionally denied her request for modified assignment forcing her to commute three to four hours every day to her assignment as compared to a ten-minute commute which would have been consistent with managing her high-risk pregnancy. (*Id.* ¶¶ 216-219.)

The court must now determine whether these instances within the time period are related to the allegations that occurred prior to April 9, 2020, under Title VII, and September 21, 2019, under § 1983, the NYSHRL, and the NYCHRL to allege a continuing violation. The court finds that they are not.

Plaintiff's timely allegations of a hostile work environment center around her request and denial of a modified work assignment. However, none of the claims outside of the limitations period relate to a request for a modified work assignment. In fact, she notes several times throughout her Complaint that she did, in fact, receive modified assignments that occurred after requests made due to her pregnancy and despite NYSP not having a maternity policy in place. (*Id.* ¶¶ 135-38; 151-53.) It is difficult to square Plaintiff's claims that modified assignments are rarely granted when she herself was granted at least two modified assignments prior to 2019.[9] Plaintiff also fails to allege in nonconclusory terms that any other nursing mother was denied a modified assignment.

---

[9] It is unclear from the record whether Plaintiff Whyte received a third modified assignment in relation to her first pregnancy. Paragraphs 136-140 of the Complaint are nearly identical to paragraphs 145-150 and appear to concern the same time period and transfer. For purposes of this motion, the court will treat these paragraphs as concerning one modified assignment.

Nevertheless, the court considers the "entire scope of the hostile work environment claim" and finds that the allegations of a pattern of pregnancy discrimination with respect to the conditions of her employment identified outside of the statute of limitations period—*i.e.*, allegations relating to reasonable accommodations and breaks to express milk between 2017 and 2019—are sufficiently related to the circumstances surrounding the denial of her modified assignment. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010). But for the continuing violation doctrine to apply, Plaintiff must show that the discrimination was ongoing since August 15, 2007. While Plaintiff describes specific allegations of discrimination dating back to 2017—the year her individual claims allegedly began to accrue—she fails to identify a single act before 2017 that could justify the application of the continuing violation doctrine back to 2007. As such, the alleged acts that other nursing mothers faced are "too sporadic" and conclusory to be considered "actionable as part of the same hostile work environment." *Grimes-Jenkins*, No. 16-CV-4897 (AT) (JCF), 2017 WL 2258374, at *13; *see Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 145, 154 (E.D.N.Y. 2005) (holding six-year gap between alleged events precludes application of continuing violation doctrine on hostile work environment claim).

The court therefore GRANTS Defendants' motion to dismiss with respect to the discrimination, retaliation, and hostile work environment claims that occurred prior to April 9, 2020, under Title VII, and September 21, 2019, under § 1983, the NYSHRL, and the NYCHRL.

### 3.   Claims Against Defendant Hogan and Volforte[10]

Defendants contend, and Plaintiff appears not to dispute, that the claims involving Defendant Volforte occurred prior to September

---

[10] The court does not consider the claims against Defendants Corlett, D'Amico, or Willis as they are dismissed on other grounds discussed *supra*.

21, 2019, and are therefore time-barred because he was not personally involved in any alleged action occurring within the limitations period. (Defs.' Mot. at 10.) Plaintiff only responds that she previously withdrew her claims against him and the other defendants in their official capacities. (Pl.'s Opp. at 11.) The court takes this statement to mean that because the individual defendants are sued in their individual capacity, Plaintiff's claims against them are still actionable. But this is not responsive to the argument raised concerning the limitations period.

Nowhere in the Complaint does she allege specific acts on the part of Mr. Volforte within the time period to bring him within the ambit of her claims. *See Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *5 (S.D.N.Y. Mar. 22, 2018) (plaintiff "must *allege* that a particular defendant committed at least one wrongful act within the statutory period to state a claim against that defendant" (emphasis in original)); *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009) (finding that even where the continuing violation doctrine could otherwise apply, a claim must be dismissed where there is "no allegation and no evidence" that a defendant committed a wrongful act within the statute of limitations period).

Moreover, Plaintiff does not allege that Mr. Volforte was personally involved in *any* alleged action. "A defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012).

Defendants do not argue Defendant Hogan must be dismissed on the same ground, but upon review of the claims, the court finds that Plaintiff also fails to allege that Mr. Hogan was personally involved in any alleged action within the time period. (*See, e.g.*,

---

The court also does not consider the claims against Defendant Corbett (now deceased) as the parties previously agreed to dismiss him from the instant suit. (*See* Defs.' Ex. E Emails; Stip. of Vol. Dismissal.)

Compl. ¶¶ 157-58 (describing Hogan's conduct from February 2019 through July 2019); *id.* ¶¶ 188-91 (same)); *see also Rivera v. Cnty. Of Suffolk*, No. 19-CV-0610 (AYS), 2022 WL 1810717, at *2 (E.D.N.Y. June 2, 2022) (dismissing *sua sponte* § 1983 claims against county police department because it was considered a municipality that cannot be sued under the statute); *Harden v. Bair*, No. 21-CV-12434, 2022 WL 2716299, at *5 (E.D. Mich. May 18, 2022), *report and recommendation adopted sub nom. Harden v. Easter Seals*, No. 21-CV-12434, 2022 WL 2342704 (E.D. Mich. June 29, 2022) (dismissing claims *sua sponte* where plaintiff failed to allege facts sufficient to show defendants engaged in a civil conspiracy, directly participated in misconduct, acted with deliberate indifference, or retaliated against the plaintiff).

Defendants' motion to dismiss is therefore GRANTED with respect to the claims against Defendant Volforte. The court also finds claims against Defendant Hogan must also be DISMISSED.

### D. Failure to State a Claim

The court now turns to the merits of Plaintiff's claims. Plaintiff has lodged a myriad of claims against Defendants. However, the court notes that the Complaint fails to specify which of plaintiff's factual allegations support each claim. Consequently, the court is left to deduce which of Plaintiff's allegations are implicated by which of her assorted claims.

#### 1. NYSHRL Claims

As a threshold matter, the court finds that Plaintiff's NYSHRL claims must be dismissed against the NYSP as barred by the Eleventh Amendment, and the individual Defendants for failure to state a claim for which they can be held liable. The court addresses each in turn.

### a. *Eleventh Amendment*

Defendants assert that Plaintiff's NYSHRL claims against the NYSP are barred by the Eleventh Amendment. (Defs.' Mot. at 10.) Plaintiff does not address this argument in her pleadings.

"As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Allessi v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, 16 F.Supp.3d 221, 225 (W.D.N.Y. 2014). "District courts in New York have found that the New York State Police [] is protected by the Eleventh Amendment because the NYSP is an arm of the [state]." *Bohmer v. New York*, 684 F. Supp. 2d 357, 362 (S.D.N.Y. 2010) (citing cases).

New York has not waived its sovereign immunity from NYSHRL claims in federal court. *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 220 (N.D.N.Y. 2014). Because suing NYSP is effectively suing the state, Plaintiff's NYSHRL claims are also barred because Plaintiff has named the state instead of a state official.[11] *See Santiago v. New York State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991) (referencing *Ex Parte Young*, 209 U.S. 123 (1908)).

Therefore, Defendants' motion to dismiss Plaintiff's NYSHRL claims against NYSP as barred by the Eleventh Amendment is GRANTED.

### b. *NYSHRL Claims Against the Individual Defendants*

Defendants argue, again without a response from Plaintiff, that Plaintiff's NYSHRL discrimination and hostile work environment

---

[11] The doctrine of *Ex parte Young*—which allows a plaintiff to sue an otherwise immune entity if she names a state official in his official capacity, alleges an ongoing violation of federal law, and seeks prospective relief—is inapplicable in this case because Plaintiff voluntarily dismissed her claims against all defendants acting in their official capacities. (Pl.'s Opp. at 11; Stip. of Vol. Dismissal); *see also Jackson*, 63 F. Supp. 3d at 220.

claims against the remaining individual Defendants should be dismissed because they are not "employers" under the statute and therefore cannot be held liable. (Defs.' Mot. at 11.)

The NYSHRL provides for individual liability for discriminatory practices under two theories: (i) if the individual qualifies as the plaintiff's "employer," N.Y. Exec. Law § 296(1); or (ii) if the individual aided and abetted the unlawful discriminatory acts of others covered by the NYSHRL, *id.* § 296(6). [12]

Defendants raise the first theory in their motion to dismiss arguing that Plaintiff is foreclosed from asserting liability because the NYSHRL does not render individual employees liable as employers. *Kent-Friedman v. New York State Ins. Fund*, No. 18-CV-4422 (VM), 2023 WL 6292693, at *9 (S.D.N.Y. Sept. 27, 2023) ("A corporate employee simply does not qualify as an employer, regardless of the employee's position or relationship to the employer."). The court agrees.

Therefore, Plaintiff may only maintain her NYSHRL claims if she can prevail under the second theory pursuant to N.Y. Exec. Law § 296(6). *See Baptiste*, 2023 WL 4266914, at *6 (noting that individual employees may be held liable under the aider-and-abettor theory). The court finds that she does not, and Plaintiff's NYSHRL claims must be dismissed. Plaintiff has not alleged that

---

[12] Defendants do not assert that Plaintiff's NYSHRL retaliation claim against the individual Defendants should be dismissed on the same grounds. However, the court notes that the same analysis applies when analyzing individual liability for discriminatory or retaliatory acts under N.Y. Exec. Law § 296. *See Baptiste*, No. 22-CV-2785 (JMF), 2023 WL 4266914, at *6 (S.D.N.Y. June 29, 2023) (dismissing NYSHRL retaliation claim because Defendant was not an employer and did not aid and abet the discriminatory conduct); *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 394 (S.D.N.Y. 2019) (plaintiff asserting retaliation claims under NYSHRL for defendant's actions individually and as an aider and abettor).

any of the individual Defendants aided and abetted the discriminatory acts of others. "An individual may not be held liable [] merely for aiding and abetting his own discriminatory conduct but only for assisting another party in violating" that law. *Virola v. XO Commc'ns, Inc.*, No. 05-CV-5056 (JG)(RER), 2008 WL 1766601, at *20 (E.D.N.Y. Apr. 15, 2008).

Plaintiff has failed to allege that any Defendant actually aided, abetted, or incited the discriminatory conduct of their employer or any other in violation of the NYSHRL. For instance, Plaintiff does not assert that a supervisor forced her commanding Sergeant to revoke or deny a modified assignment, nor does she allege that a supervisor incited others to make discriminatory comments about Plaintiff's pregnancy, need to express milk, or gender. Accordingly, her NYSHRL claims are DISMISSED.

As the court previously dismissed Plaintiff's NYSHRL claims against NYSP, it holds that Defendants' motion to dismiss Plaintiff's NYSHRL claims is GRANTED in its entirety.

Remaining before the court are Plaintiff's Title VII claims against NYSP after April 9, 2020, and her § 1983 and NYCHRL claims against the individual Defendants Bruen, Larkin, and Ramirez after September 21, 2019.[13]

### 2. Pregnancy Discrimination Under Title VII, § 1983, and the NYCHRL

#### a. *Title VII Discrimination Claim*

"Title VII makes clear that discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex." *Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 447 (S.D.N.Y. 2014).

---

[13] Plaintiff has failed to allege any acts that may give rise to liability by "John Does 1-10 as Former Directors – New York State Governor's Office of Employee Relations" listed in the caption of Plaintiff's pleadings. *See Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004). Accordingly, those unnamed defendants are dismissed without prejudice.

Specifically, under the Pregnancy Discrimination Act, discrimination "on the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." *Id.* (quoting 42 U.S.C. § 2000e(k)).

In order to defeat a motion to dismiss in a Title VII sex discrimination case, a plaintiff "must plausibly allege that (1) the employer took adverse action against her, and (2) her sex was a motivating factor in the employment decision." *Luna v. NYC Taxi & Limousine Comm'n,* No. 21-CV-1408 (DG) (PK), 2022 WL 20319227, at *12 (E.D.N.Y. Sept. 7, 2022).[14] Without more, "[u]ndesired office assignments are not adverse employment actions." *Klein v. New York Univ.,* 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011); *see Cunningham v. New York State Dep't of Lab.,* 326 F. App'x 617, 619 (2d Cir. 2009) ("[E]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII.").

Here, Plaintiff learned of her second pregnancy on or around October 23, 2020 and alleges the following discriminatory acts: (1) Lieutenant Christopher M. Kyle rescinded her transfer to SP Farmingdale, on or about December 15, 2020, pending evaluation of her high-risk pregnancy monitoring plan by a Division doctor, and (2) Defendants Bruen and Larkin intentionally denied her request for a modified assignment to a base ten minutes

---

[14] At the pleadings stage, a plaintiff is not required to establish a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 84 (2d Cir. 2015) (holding that a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation").

from her home and OB/GYN on or about December 25, 2020, and (3) in doing so, Defendants Bruen and Larkin forced Plaintiff to commute three to four hours daily to her assignment while pregnant. (Compl. ¶¶ 203-04, 216-218.)

Recission of Plaintiff's December 15th assignment alone does not rise to the level of an adverse employment action. Plaintiff was informed on or about December 15, 2020 that she would be transferred to SP Farmingdale. (Compl. ¶ 202.) That same evening, her Sergeant notified her that her transfer was rescinded. (*Id.* ¶ 203.) Plaintiff fails to allege how this this action was a "materially adverse change in the terms and conditions of employment" when she had yet to begin the assignment. *Luna*, 2022 WL 20319227, at *12.

Moreover, the fact that her assignment was rescinded, and that she was to return to road work or use personal sick leave until NYSP's Division doctor evaluated her high-risk pregnancy monitoring plan does not in and of itself amount to pregnancy discrimination. (Compl. ¶ 203.) Plaintiff states that requiring her to undergo an evaluation to confirm whether her pregnancy was "high risk" amounted to "mean-spirited treatment" which reinforced her belief that female employees are not respected within NYSP, but she does not describe how evaluation of a treatment plan by a Division doctor gives rise to an inference of discrimination. *Gratton v. Jetblue Airways*, No. 04-CV-7561 (DLC), 2005 WL 1251786, at *9 (S.D.N.Y. May 25, 2005) (dismissing claim based on allegations that plaintiff's supervisors required her to provide a doctor's note explaining her pregnancy limitations and reprimanding her for complaining about their treatment of plaintiff). Thus, the rescission of the transfer offer is not an adverse action under Title VII.

Plaintiff also asserts, however, that after the rescission of her desired assignment, Defendants then assigned her to SP

Manhattan, which added three to four hours to her daily commute. She does not allege that her transfer resulted in more cumbersome or mundane job responsibilities or lower compensation. *See Taylor v. New York City Dep't of Educ.*, No. 11-CV-3582, 2012 WL 5989874, at *8 (E.D.N.Y. Nov. 30, 2012). But transferring an employee to a position that requires a three to four hour longer commute undoubtedly "makes a normal life difficult" for an employee so as to constitute an adverse employment action under Title VII. *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002). This is especially the case given Plaintiff's suggestion that the longer commute goes against her pregnancy monitoring plan and the fact that NYSP had a Human Resources investigator obtain further information about her pregnancy and question her about the "veracity" of that plan. Taken together, such acts give rise to a plausible inference that this discrimination was intentional and based on Plaintiff's status as a pregnant woman. This is sufficient to state a claim under Title VII at this stage of the pleadings.

Defendants' motion to dismiss Plaintiff's Title VII discrimination claim against NYSP is therefore DENIED.

### b.  § 1983 Discrimination Claim

Defendants also move for dismissal of Plaintiff's § 1983 claim against the individual Defendants. This claim alleges that the individual defendants, acting under color of law, and "having been fully advised that [Plaintiff and the Nursing Mothers Class] are being deprived of their constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against them, or knowing such pregnancy discrimination was taking place, knowingly omitted to act to protect them." (Compl. ¶ 242.)

"Section 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims." *Chick v. Cnty. of Suffolk*, 546 Fed. Appx.

58, 59 (2d Cir. 2013); *see Feingold*, 366 F.3d at 159 ("Where color of state law is undisputed, a plaintiff's Section 1983 discrimination claim parallels a Title VII claim."); *Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 457 (N.D.N.Y. 2022).

The court finds Plaintiff plausibly alleged facts sufficient to maintain her discrimination claim under Title VII. *See supra.*

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's § 1983 claims against the remaining Defendants is DENIED.

### c.   NYCHRL Discrimination Claim

Plaintiff's NYCHRL claims are analyzed using the same framework as Title VII but under a more liberal pleading standard. *See Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) ("The NYCHLR does not require that a plaintiff prove an adverse employment action. Rather, the plaintiff need only show differential treatment—that she is treated less well—because of a discriminatory intent."); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) ("New York Courts examine claims under [the NYSHRL] with the same analytical lens as corresponding Title VII-based claims.").

Because Plaintiff has adequately pled her discrimination claims under Title VII, her similar claim under the NYCHRL necessarily survives. *See, e.g., Farmer v. Shake Shack Enterprises*, LLC, 473 F. Supp. 3d 309, 327 (S.D.N.Y. 2020); *Levy v. Legal Aid Soc'y*, 408 F. Supp. 3d 209, 217 (E.D.N.Y. 2019).

The court therefore DENIES Defendants' motion to dismiss Plaintiff's NYCHRL discrimination claims.

### d.   Pattern-or-Practice Claim

Plaintiff also raises a pattern-or-practice claim in her Complaint on behalf of herself and the Nursing Mothers Class alleging that, since 2007, the NYSP through its agents has "engaged in a pattern and practice of pregnancy discrimination against them with

respect to the terms, conditions and privileges of employment because of their gender." (Compl. ¶ 229.)

In analyzing a pattern-or-practice claim, the plaintiff must make "a showing of a pervasive policy of intentional discrimination," rather than demonstrating "a single instance of discriminatory treatment." *Frazier v. Stanley*, No. 16-CV-804 (RJS), 2018 WL 11585450, at *10 (S.D.N.Y. Nov. 29, 2018). A statistical showing of disparate impact may suffice, though is not required at the motion to dismiss stage. *Id.*, *see also Barrett*, 39 F. Supp. 3d 407, 429 (S.D.N.Y. 2014) (collecting cases standing for the proposition that statistical allegations need not be pled in the complaint to survive a motion to dismiss).

Plaintiff's pattern-or-practice claim centers around discrimination for refusing to provide reasonable break times and a proper location to express and store breastmilk, failing to provide re-sized protective vests due to changes in weight relating to pregnancy, and failing to inform nursing mothers of their rights to take unpaid leave, among others. (*See* Compl. ¶¶ 91-118.)

Defendants argue that because Plaintiff has not alleged any statistical evidence or alleged a sufficient number of instances of discrimination, she is unable to state a plausible pattern-or-practice claim. (Defs.' Mot. at 20.)

The court finds *Spires v. MetLife Group, Inc.*, cited by the Defendant, instructive. As in that case, Plaintiff has not pointed to any other nursing mother who was allegedly discriminated against on the basis of her status as a nursing mother. *See Spires v. MetLife Group, Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *4 (S.D.N.Y. Sept. 18, 2019). In denying the pattern-or-practice claim, the court in *Spires*, found that the plaintiff—although alleging that a colleague filed a complaint to the EEOC charging MetLife with a hostile work environment, and age and race discrimination—did not provide further details on the matter or about the individual making similar allegations. *Id.* Here, Plaintiff

Whyte does not even assert that another nursing mother filed a complaint. Plaintiff merely makes a conclusory statement that NYSP retaliated against nursing mothers for filing such complaints. (Compl. ¶ 238.)

Plaintiff may not assert an ongoing discrimination policy simply by invoking the magic words "pattern" or "practice." *Blake*, No. 02-CV-3827 (CBM), 2003 WL 21910867, at *5. Accordingly, Plaintiff's claim based on a pattern-or-practice of discrimination is DISMISSED.[15]

### 3. Hostile Work Environment Under Title VII, § 1983, and the NYCHRL

#### a. *Title VII Hostile Work Environment Claim*

To state a hostile work environment claim under Title VII, a plaintiff must establish that "her workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015). "Severity and pervasiveness are independent standards, only one of which the plaintiff must meet." *Miller-Sethi v. City Univ. of New York*, No. 21-CV-8591 (JPO), 2023 WL 419277, at *7 (S.D.N.Y. Jan. 26, 2023). For conduct to be "pervasive" enough to constitute a hostile environment, "the challenged incidents must be more than episodic; they must be sufficiently continuous and concerted." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir.2003). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). However, even a single act can

---

[15] Defendants also ask the court to dismiss the class allegations because Plaintiff lacks standing to represent the Nursing Mothers Class. (Defs.' Mot. at 21-22.) The court declines to rule on the putative class at this time. It does note, however, that the class definition appears premised on Plaintiff's pattern-or-practice claim which this court dismissed.

meet the "severity" standard if, "by itself, it can and does work a transformation of the plaintiff's workplace." *Id.*; *see Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 866 F. Supp. 2d 147, 161 (E.D.N.Y. 2011). At the motion to dismiss stage, a plaintiff must allege facts showing "she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Farmer*, 473 F. Supp. 3d at 335 (citing *Patane*, 508 F.3d at 113).

The court finds that Plaintiff has failed to allege a hostile work environment under Title VII. In addition to the recission of her assignment transfer to SP Farmingdale, Plaintiff alleges that in December 2020, Defendant Ramirez "questioned the veracity of" her high-risk pregnancy plan noting that he "needs more details about her medical condition before passing it onto the Division doctor." (Compl. ¶¶ 209-10.) Plaintiff alleges she was mortified. (*Id.* ¶ 211.) She notes that several days later, Ramirez "posed accusatory questions" to members of her family, including her spouse, who is also a state trooper, regarding her high-risk pregnancy monitoring plan. (Compl. ¶ 212.) As a result, Plaintiff was "devastated" by Ramirez's "nasty, insensitive, mean-spirited behavior towards her and her family" which only reinforced her belief that "female employees are not respected within the culture of [NYSP]." (*Id.* ¶ 213.) She also asserts that she never received a decision about that request for a modified assignment. (*Id.* ¶ 214.)

Neither Ramirez's accusatory questioning nor Bruen's and Larkin's denial of her request for modified assignment, however, are acts so severe to render the NYSP a hostile work environment. Taken together, even with the context of Sergeant Dolan's single

remark in 2017[16], these acts are not "sufficiently continuous and concerted in order to be deemed pervasive." *Feingold*, 366 F.3d at 150. Similarly, the allegations do not establish the level of frequency that the Second Circuit has contemplated when reviewing hostile work environment claims. *Alfano*, 294 F.3d at 379 (collecting cases where evidence was held insufficient as a matter of law to alter the terms and conditions of employment).

Plaintiff cites to *Griffin v. Laboratory Synergy, LLC*, for the proposition that Defendants have imposed undue burdens on her because of her pregnancy. No. 7:11-CV-741 (VB), 2011 WL 3251551 (S.D.N.Y. July 5, 2011). But her reliance on that case is misplaced. In *Griffin*, the plaintiff informed her supervisor that she was pregnant, and soon thereafter, her supervisor, Eric Weinstein, instituted burdensome requirements such as requiring plaintiff to make her appointments during her lunch time or use sick days, forcing her to obtain his approval for all time off, critically asking plaintiff what her intentions were regarding her employment in light of her pregnancy, and lodging a campaign of attacks and criticism against plaintiff, trying to force her to quit her position. *Id.* at *1. When her supervisor moved her to part time, Plaintiff responded that she could not afford part-time employment and was subsequently terminated. *Id.* All of the discriminatory acts in *Griffin* were conducted by the same supervisor; indeed, employees dubbed his questionable conduct as the "Weinstein effect." *Id.*

In this case, Plaintiff alleges discriminatory conduct on the part of Defendant Ramirez in one instance, and Defendants Bruen

---

[16] While Sergeant Dolan's remark is outside of the statute of limitations period, because some of the acts contributing to the hostile work environment occurred within the limitations period, "the entire time period of the hostile work environment may be considered by a court for the purposes of determining liability." *Towers*, No. 04-CV-5243 (FB) (RML), 2007 WL 1470152, at *2 (E.D.N.Y. May 21, 2007) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

and Larkin in another. She does not allege that she has suffered a pay cut, demotion, or termination. Instead, she avers that the acts "taken together" are at least as severe and pervasive as the conduct in *Griffin*.[17] The court disagrees and concludes that Plaintiff's hostile work environment claim under Title VII is DISMISSED.

Defendants' motion to dismiss on this ground is GRANTED.

### b.   § 1983 Hostile Work Environment Claim

The standard for showing a hostile work environment under Title VII and § 1983 is essentially the same. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir.2004). The difference being that under Title VII, the claim must be against the employer whereas under § 1983, discriminatory acts giving rise to a hostile

---

[17] Plaintiff similarly cites to three other cases, but each carry materially different facts than the case at bar. *See, e.g., Dantuono v. Davis Vision, Inc.*, No. 07-CV-2234 (TCP) (ETB), 2009 WL 5196151, at *8 (E.D.N.Y. Dec. 29, 2009) (denying summary judgment to hostile work environment claim where plaintiff alleged defendant was "snippy" and "short" with plaintiff; "talked down" to her and "scolded" her; "bad mouthed" her to other executives; communicated through email rather than in-person; and banished [p]laintiff from her office when speaking with others ultimately leading to her termination); *Towers v. State Univ. of New York at Stony Brook*, No. 04-CV-5243 (FB) (RML), 2007 WL 1470152, at *1 (E.D.N.Y. May 21, 2007) (denying motion to dismiss as to hostile work environment claim where plaintiff alleged that she was given a poor recommendation; denied maternity leave; assigned an unmanageable workload; and threatened with adverse consequences if she did not complete her work resulting in her accepting a pay-cut; and denied the renewal of her postdoctoral research contract); *Amador v. All Foods, Inc.*, No. CV 12-1715 (SJF) (AKT), 2013 WL 1306305, at *11 (E.D.N.Y. Feb. 20, 2013), *report and recommendation adopted*, No. 12-CV-1715 (SJF) (AKT), 2013 WL 1282353 (E.D.N.Y. Mar. 27, 2013) (denying motion to dismiss as to hostile work environment claim where plaintiff alleged derogatory statements about pregnant women; plaintiff was told she could not work once she reached the sixth month of her pregnancy; and was ultimately terminated for failure to work the graveyard shift).

work environment claim may be asserted against individuals. *Id.* at 226.

Incorporating the Title VII analysis above, Plaintiff's § 1983 claim against the individual Defendants must also be DISMISSED.

### c.   NYCHRL Hostile Work Environment Claim

The standard for maintaining a hostile work environment claim under the NYCHRL is lower than state and federal law. *Bermudez*, 783 F. Supp. 2d at 579. "The New York City Human Rights Law was intended to be more protective than the state and federal counterpart." *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (Sup. Ct. 2006). The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 76 (2009). ("[Q]uestions of severity and pervasiveness are applicable to consideration of the scope of permissible damages, but not to the question of underlying liability.") At a minimum, however a plaintiff must "plead facts tending to show that actions that created the hostile work environment were taken against [her] because of a prohibited factor." *Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021). And even under the NYCHRL, "petty, slight, or trivial inconveniences are not actionable." *Kumaga v. New York City Sch. Const. Auth.*, 910 N.Y.S.2d 405, 2010 WL 1444513, at *14 (Sup. Ct. 2010).

While thin, Plaintiff's allegations are sufficient to state a claim under the NYCHRL. In addition to her claim that she was denied a request for modified assignment stemming from the interview with Defendant Ramirez, she asserts that when on modified assignment in the past, the majority of the light and full duty troopers were male even though those assignments could easily accommodate pregnant female employees. (*See* Compl. ¶¶ 139-40, 154-55.) She also alleged that assignments that could accommodate pregnant women were rarely if ever granted. (*See* Compl. ¶¶ 140, 155.) Her own requests were granted in the past,

but she alleges that on at least one occasion she was denied, and that this occurred after she announced her pregnancy and was questioned about her high-risk monitoring plan. (*See* Compl. ¶¶ 195-98, 210-12, 217-218.) These allegations, taken together, with the remark from Sergeant Dolan expressing his personal preference to keep Plaintiff on patrol despite her pregnancy, (Compl. ¶ 141) allow Plaintiff to plausibly state a claim that she was "treated less well" due to her pregnancy. *Syeed,* 568 F. Supp. 3d at 321; *see also Lenart,* 131 F. Supp. 3d at 69 (finding plaintiff's "thin" allegations did not survive Title VII and NYSHRL standards but did suffice under NYCHRL).

Accordingly, Defendants' motion to dismiss with respect to Plaintiff's hostile work environment claims under Title VII and § 1983 is GRANTED. Their motion to dismiss Plaintiff's hostile work environment claim under the NYCHRL is DENIED.

### 4. Retaliation Under Title VII, § 1983, and the NYCHRL

#### *a. Title VII Retaliation Claim*

To state a *prima facie* retaliation claim, a plaintiff must plead facts showing "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Torre v. Charter Commc'ns, Inc.,* 493 F. Supp. 3d 276, 289 (S.D.N.Y. 2020). Protected activities "include actions taken to protest or oppose statutorily prohibited discrimination." *Buchanan v. City of New York,* 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021). At the motion to dismiss stage, the plaintiff need only plausibly allege that defendants discriminated against them (*i.e.,* took an adverse employment action) for opposing an unlawful employment practice. *Farmer,* 473 F. Supp. 3d at 331.

In her opposition brief, Plaintiff cites a list of paragraph numbers from her Complaint to suggest that the Defendants' "adverse employment actions are essentially simultaneously right after complaining about her treatment such that dismissal would be inappropriate at this juncture." (Pl.'s Opp. at 17.) In parsing out Plaintiff's string of citations to her Complaint, the court finds that the referenced acts do not show she was discriminated against because she opposed an unlawful employment practice. First, upon the recission of her transfer to SP Farmingdale, Plaintiff does not allege she complained of the change in assignment to any employee or superior. (Compl. ¶ 203.) She alleges only that she was devastated by the insensitive treatment—this is insufficient. Never receiving a decision about her request for a modified assignment, which followed Ramirez's alleged accusatory questions about her pregnancy posed to her family members, could be considered an adverse employment action, but, again, she does not allege that she complained of Ramirez's questioning or that a complaint led to her not receiving her requested assignment. (Compl. ¶¶ 212, 214.) Likewise, the fact that Plaintiff alleges she was intentionally denied a modified assignment closer to home and was forced to commute three to four hours daily could be construed as an adverse employment action. But, again, there are no facts pled that she complained of this denial, just that she was "devastated." (Compl. ¶¶ 217-18.) *See Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000) ("An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.").

Plaintiff does allege that shortly after being denied her preferred modified assignment, she contacted the Human Resources – Leave Department, but she contacted them for reasons that do not appear related to her modified assignment request. (Compl. ¶¶ 220-21.) Instead, she appears to suggest that in denying her

leave, NYSP violated her rights under the Family and Medical Leave Act ("FMLA") and Uniformed Services Employment and Re-Employment Act ("USERRA"). (*Id.* ¶¶ 220-27.) But this is woefully insufficient to state a claim for retaliation.

Finally, in Plaintiff's Complaint, she states in a conclusory fashion that Defendants engaged in "various retaliatory actions against them for opposing pregnancy discrimination and filing such complaints with its agents, the NYSP Office of Equity and Inclusion and the EEOC." (Compl. ¶ 238.) But nowhere in her pleadings does she allege facts that she, or any other nursing mother, was retaliated against for filing a charge of discrimination. Lodging a complaint, without more, is not a basis for retaliation under Title VII.

Plaintiff's claim of retaliation under Title VII is therefore DISMISSED.

### b.  § 1983 Retaliation Claim

"The elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Oliver v. New York State Police*, No. 15-CV-00444 (BKS) (DJS), 2020 WL 1989180, at *48 (N.D.N.Y. Apr. 27, 2020) (quoting *Vega*, 801 F.3d at 81).

Thus, for similar reasons, Plaintiff's claim of retaliation under § 1983 is also DISMISSED.

### c.  NYCHRL Retaliation Claim

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013). New York courts have interpreted the NYCHRL's retaliation provisions broadly. *Id.* They have held that "opposing any practice can include situations

where a person, before the retaliatory conduct occurred, merely made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong." *Lettieri v. Anti-Defamation League Found.*, No. 22-CV-9889 (PAE), 2023 WL 5152447, at *6 (S.D.N.Y. Aug. 10, 2023).

But even under this broader standard, Plaintiff's retaliation claim must be dismissed for failure to plead the element of notice. "Although a broad range of conduct can qualify as retaliatory under the NYCHRL, the plaintiff must still allege that the defendant was aware of the protected activity, such that it could have caused the retaliation." *Id.* at *12. Here, Plaintiff has failed to allege any facts sufficient to infer that she complained of unlawful discrimination or that *any* defendant was on notice of her complaints.

Plaintiff's claim for retaliation under the NYCHRL is therefore DISMISSED.

In sum, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's retaliation claims under Title VII, § 1983, and the NYCHRL.

### 5. Plaintiff's Purported FMLA and USERRA Claims

Defendants note that Plaintiff has attempted to raise claims under FMLA and USERRA despite failing to include separate counts for the same in her Complaint. (*See generally* Compl. ¶¶ 220-27.) As discussed with respect to her retaliation claim, Plaintiff asserts that the Human Resources Department informed her that she did not qualify for leave under FMLA because she requested military leave in 2019 and 2020. (*Id.* ¶¶ 220-21.) Plaintiff argues that she does qualify and accordingly the NYSP violated her rights under FMLA and USERRA. (*Id.* ¶¶ 226-27.)

Defendants argue that these "threadbare" allegations are insufficient to state a plausible claim because the Complaint does not

identify the type of FMLA leave Plaintiff was seeking nor its duration. (Defs.' Mot. at 25.) Rather than attempt to salvage these claims, Plaintiff does not respond at all.

"When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 208 (D.D.C. 2016); *see also Brandon v. City of New York*, 705 F.Supp.2d 261, 268 (S.D.N.Y. 2010) (collecting cases deeming claims abandoned when plaintiffs fail to address defendants' arguments).

Accordingly, Defendants' motion to dismiss is GRANTED with respect to the purported FLMA and USERRA claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions are GRANTED in part and DENIED in part.

Specifically, the court holds the following:

- Defendants' motion to dismiss is GRANTED for insufficient service of process on the individual Defendants Beach, Corlett, D'Amico, and Willis.

- Defendants' motion to dismiss is GRANTED for lack of personal involvement as to the individual Defendant Volforte. The court also DISMISSES Defendant Hogan on the same ground.

- Defendants' motion to dismiss is GRANTED with respect to conduct that occurred prior to April 9, 2020 under Title VII, and September 21, 2019 under § 1983, the NYSHRL, and the NYCHRL for Plaintiff's discrimination, retaliation, and hostile work environment claims.

- Defendants' motion to dismiss is GRANTED as to all NYSHRL claims.

- Defendants' motion to dismiss is DENIED as to Plaintiff's Title VII, § 1983, and NYCHRL pregnancy discrimination claims.

- Defendants' motion to dismiss is GRANTED with respect to Plaintiff's hostile work environment claims under Title VII and § 1983.

- Defendants' motion to dismiss is DENIED with respect to Plaintiff's hostile work environment claim under the NYCHRL.

- Defendants' motion to dismiss is GRANTED with respect to Plaintiff's retaliation claims under Title VII, § 1983, and the NYCHRL.

- To the extent Plaintiff alleges FLMA and USERRA claims, Defendants' motion to dismiss is GRANTED.

All dismissed claims are without prejudice. The parties are DIRECTED to contact the chambers of Magistrate Judge Cheryl L. Pollak regarding next steps in the case.

SO ORDERED.

Dated:     Brooklyn, New York
           November 9, 2023

                                    s/Nicholas G. Garaufis

                                    NICHOLAS G. GARAUFIS
                                    United States District Judge